**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEMUEL TYRA, | ) | |
| | ) | |
| Petititoner, | ) | 07 C 1910 |
| | ) | No. (03-CR-1001) |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On June 24, 2004, petitioner Lemuel Tyra pled guilty on a single count of distributing 80.3 grams of crack cocaine in violation of 21 U.S.C § 841(a)(1). On May 19, 2005 – after giving Tyra credit for his cooperation for prosecutors – we sentenced him to, *inter alia*, 108 months in federal prison.

Tyra has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The motion alleges that counsel's assistance at trial and on appeal was deficient, depriving Tyra of his Sixth Amendment right to counsel. Tyra's claim for ineffective assistance of counsel rests on two asserted errors: 1) after Tyra's appeal was denied, counsel failed to petition the United States Supreme Court for a writ of certiorari; and 2) at the sentencing hearing – and again on direct appeal – counsel did not raise an objection to government arguments (in alleged violation of U.S. Sentencing Guidelines § 1B1.8) referencing Tyra's admitted criminal history. We deny both claims.

I.  **STANDARD OF REVIEW**

In considering a § 2255 motion, unless we find that the facts Tyra pleads and the exhibits he attaches to his motion are insufficient to entitle him to relief, we should order a hearing or

1

alternative fact-finding. *See* 28 U.S.C. § 2255; *Pittman v. Warden, Pontiac Correctional Center*, 960 F.2d 688 (7th Cir. 1992); *Blackledge v. Allison*, 431 U.S. 63 (1977).

To support a claim for ineffective assistance of counsel, a petitioner must prove both the objectively deficient performance of his counsel and prejudice. *Strickland v. Washington,* 466 U.S. 668 (1984). First, a petitioner must identify specific acts or omissions of counsel that "fell below an objective standard of reasonableness." *Id*. at 687. In this competence inquiry, "judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Second, Tyra must "affirmatively prove prejudice," by showing to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 693. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 695.

## II. ANALYSIS

### a. Counsel's Alleged Failure to Petition for Writ of Certiorari

Tyra claims that reasonably competent counsel would have filed – as did counsel for another defendant in a similar case – a petition for writ of certiorari with the Supreme Court with respect to the issues Tyra appealed to the Seventh Circuit. *Compare Tyra v. United States*, 454 F.3d 686 (2006), *with Rita v. United States,* 127 S. Ct. 551 (2006).[1] The *Rita* petition was filed

---

[1] The Supreme Court granted writ of certiorari on the following questions: "1) Was the district court's choice of within-Guidelines sentence reasonable? 2) In making that determination, is it consistent with *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), to accord a presumption of reasonableness to within-Guidelines sentences? 3) If so, can that presumption justify a sentence imposed without an explicit analysis by the district court of the 18 U.S.C. § 3553(a) factors and any other factors that might justify a lesser sentence?" *Rita v. US.* 127 S. Ct. 551 (2006). Tyra does not challenge the reasonableness of his sentence, but he does raise the third issue. *Tyra v. U.S.*, 454 F.3d at 687.

2

three weeks after the Seventh Circuit denied Tyra's appeal, and the writ was granted a month after Tyra's period for petitioning the Supreme Court expired. *Id.* He claims counsel's failure to petition had a prejudicial effect on his direct appeal, because "there is a reasonable probability that the Supreme Court would have held his petition for Writ of Certiorari in abeyance and decided it in light of the merits of *Rita.*" (Stmt. of Claim ¶ 47) This claim fails.

First, Tyra lacks a Sixth Amendment right to effective counsel in an appeal to the Supreme Court. The constitutional right to effective assistance of counsel is a manifestation of the Sixth Amendment right to counsel: where the latter is not present, neither is the former. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("Where there is no constitutional right to counsel there can be no deprivation of effective assistance."). Here, Tyra did not have a right to counsel beyond his first direct appeal. Since "[r]eview on a writ of certiorari is not a matter of right, but of judicial discretion," Sup. Ct. R. 10 (2006), there is no right to counsel for filing a petition of certiorari.[2] *See also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."); *Miller v. Keeney*, 882 F.2d 1428 (9th Cir. 1989) (because petitioner "had no constitutional right to counsel in connection with the filing of a certiorari petition, he had no constitutional right to the effective assistance of counsel for that purpose."). In the context of a state discretionary appeal, the Supreme Court in *Wainwright v. Torna*, 455 U.S. 586 (1992), held that a petitioner could not challenge the ineffective assistance of his counsel because the

---

[2] The Court has since clarified that a defendant may have a right to appointed counsel on a discretionary appeal, when it is a first-tier, error-correcting appeal. *Halbert v. Michigan*, 545 U.S. 605, 617-624 (2005). However, this *Halbert* refinement does not affect the analysis here.

petitioner "does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in this Court."[3] Accordingly, any failure by Tyra's counsel to petition for a writ of certiorari did not deprive Tyra of his Sixth Amendment right to effective assistance of counsel.

Second, even if Tyra's Sixth Amendment right to counsel remained attached at the time his counsel failed to petition for writ of certiorari, Tyra cannot satisfy *Strickland*'s prejudice prong. To establish prejudice, Tyra must be able to show some reasonable probability that he would have had his sentence vacated or remanded to the lower court had counsel petitioned for writ of certiorari. *See U.S. v. Mannino*, 212 F.3d 835, 842-43 (3rd Cir. 2000) (providing in context of challenge to appellate counsel effectiveness that defendant must show reasonable probability that he would have had his sentence vacated or remanded had counsel raised particular arguments on appeal). Tyra contends that counsel should have argued in a petition for writ of certiorari that "the District Court failed to balance or articulate its balancing of the guideline sentencing range." (Stmt. of Claim ¶ 40) However, the Supreme Cort recently handed down its ruling in *Rita,* providing that: a) courts of appeals may apply a "presumption of reasonableness" to district court sentences within the Federal Sentencing Guidelines, and b) district judges must state their reasons for sentencing, but a full opinion is not required in every case. *Rita v. United States*, 2007 WL 1772146 (Jun. 21, 2007). As the *Rita* opinion shows, it is not reasonably likely that Tyra would have received the relief he desires even if his counsel had

---

[3] While two courts of appeals have held that circuit court rules requiring that counsel inform clients of their ability to petition for writs of certiorari could provide a basis for an ineffective assistance claim, *see Profitt v. United States*, 549 F.2d 910, 912-13 (4th Cir. 1976) and *Wilson v. United States*, 554 U.S. F.2d 893 (8th Cir. 1977), subsequent decisions in *Wainwright* and *Coleman* undermine the persuasiveness of this reasoning. Further, Tyra has not alleged a failure by his counsel to inform him of his ability to petition for writ of certiorari on his own.

successfully petitioned for writ of certiorari. Therefore, even if Tyra had a Sixth Amendment right to effective counsel at that stage, he cannot satisfy the second prong of the *Strickland* analysis.[4]

  b.  *Counsel's Alleged Failures to Object to References to Tyra's Criminal History*

Tyra's second claim is that counsel unreasonably failed to object to the government's violation of USSG § 1B1.8 during his sentencing hearing. According to Tyra, the government improperly used Tyra's self-incriminating admissions obtained pursuant to a proffer and cooperation agreement, and his lawyer failed to object to those actions. (Stmt. of Claim ¶ 51)

On January 26, 2004, Assistant U.S. Attorney McGovern interviewed Tyra and his counsel. (Exhibit E3) At the beginning of this interview, Tyra signed a proffer letter. (*Id*. at 3) The record of the interview does not indicate the content of the letter. Tyra claims that he understood this proffer letter to exchange use immunity for information he might reveal to the AUSA or the FBI in exchange for cooperation. (Stmt. of Claim ¶ 12) He pled not guilty at arraignment on February 2, 2004, but later entered a plea of guilty on June 24, 2004. Tyra's plea agreement squarely conflicts with his allegations regarding the terms of the proffer agreement; further, the plea agreement contains an integration clause and a clause permitting the government to disclose the full extent of its information to the sentencing court. (Dkt. No. 16, Plea Agmt. at 1)

On February 7, 2005, Tyra and his counsel engaged in a second interview with AUSA

---

[4] Because we find that Tyra cannot demonstrate prejudice from any challenged acts or omissions of his counsel, we do not decide whether any such acts or omissions fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

McGovern. Defense counsel referred to this as "the safety valve discussion."[5] (Dkt. No. 35-1, 5/19/05 Hr'g Tr. at 5) During the safety valve discussion, Tyra admitted to dealing drugs for the previous ten years. (Exhibit E1) The record of this discussion does not mention any proffer agreements. (*Id.*) Nevertheless, Tyra maintains that he believed his admissions on February 2, 2005 were protected by the immunity allegedly promised in the January 26, 2004 proffer letter. (Stmt. of Claim ¶ 11)

The government ended the second interview because it was unsatisfied with Tyra's cooperation. (Exhibit E3 at 3) At his sentencing hearing, AUSA McGovern stated that he believed Tyra developed more contacts over ten years of dealing than he supplied. (5/19/05 Hr'g Tr. at 4) McGovern argued that Tyra's did not qualify for the two point reduction under U.S.S.G. § 2D1.1(b)(9) because – given his ten year history – Tyra failed to provide complete information,. (*Id.*) Defense counsel replied that the text of U.S.S.G. § 5C1.2(a)(5) only required complete information about "the same course of conduct." (*Id*. at 5) For purposes of determining his baseline sentencing guideline score, the parties had stipulated that conduct over the past year was the "relevant conduct" for this offense, and Tyra provided specific information for all his contacts from that year. (*Id.*) We gave Tyra credit for his cooperation, thus lowering his range from 135-168 months to 108-135 months. (*Id*. at 11)

Counsel then asked us to exercise our discretion to impose a sentence below this guideline range. (*Id*. at 13-17) Counsel argued that this was Tyra's first offense and that he behaved well on bond. (*Id.*) The government opposed the downward departure by stressing that

---

[5] The "safety valve" has two aspects: (1) under U.S.S.G. § 5C1.2 a court may go below the mandatory statutory minimum if the defendant meets 5 criteria, and (2) under U.S.S.G. § 2D1.1(b)(9) a court may reduce the guideline score 2 points if the defendant meets the same 5 criteria. The statutory minimum was 60 months.

Tyra was a "self-admitted crack dealer for ten years." (Id. at p 18) We determined that, at least in part since Tyra had admittedly been dealing drugs for ten years, we would not exercise our discretion to grant him a downward departure. (*Id*. at 20) We imposed a sentence of 108 months, at the bottom of the Guideline range. (*Id.*)

According to Tyra, the government breached the January 26, 2004 proffer agreement by using his admissions from the February 7, 2005 interview to oppose a downward departure from the sentencing guideline range.[6] (Stmt. of Claim ¶ 21) Reasonably competent counsel, he claims, would have argued at sentencing and on appeal that the use of his admissions violated U.S.S.G. § 1B1.8. (*Id*. at ¶¶ 51, 54) But for counsel's omission, he claims, there is a reasonable probability that the District Court would have treated him as a first-time offender and granted his downward departure or that the Court of Apppeals would have remanded for re-sentencing without consideration of his admissions. (*Id*. at ¶ 55).

Tyra's second claim fails under *Strickland*'s prejudice prong for several reasons. First, the record belies the claim that any immunity agreement existed. Tyra's signed plea agreement and sworn testimony at sentencing indicate no such promise existed. And, even if a promise was made on January 26, 2004, these intervening events make it unreasonable for Tyra to believe this promise remained in effect at the February 7, 2005 interview.

Tyra' plea agreement contains two merger clauses. The second paragraph on the first page indicates that "This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant…." (Plea Agreement at 1)

---

[6] Tyra does not appear to challenge either the government's reference to his history during the in-court discussions of his safety valve cooperation or his lawyer's participation in those discussions. We perceive little or no prejudicial effect resulting from the mention of a criminal history that had already been discussed just minutes earlier in the same courtroom.

Paragraph 19 further provides that "[d]efendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty." (Plea Agreement ¶ 19) Moreover, the plea agreement directly contradicts the content of Tyra's alleged promise. The plea agreement reserved the right for the government to inform us about the full extent of Tyra's conduct including any aggravating matters. The plea provides that:

> Defendant understands that the United States Attorney's Office will fully appraise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

(Plea Agreement ¶ 14) Plea agreements are contracts, the meaning of which are determined by ordinary contract principles with concern for the unique issues of fairness raised by potential government over-reaching. *U.S. v. Ingram*, 979 F.2d 1179, 1884 (7th Cir. 1992). The integration clauses Tyra's plea agreement – at the least – make it difficult for Tyra to now claim that the government made additional promises before the agreement was signed. *U.S. v. Rutledge*, 900 F.2d 1127, 1332 (7th Cir. 1990). In *Rutledge*, the Seventh Circuit rejected an argument resting on alleged prior negotiations with the government, instead emphasizing the fully integrated nature of the subsequent plea agreement:

> If all we have said thus far is wrong, there is still the language of the plea agreement to be considered. The agreement states that 'no promises or representations have been made, nor agreements reached, other than those set forth in this agreement.' This is the equivalent of an integration clause in a regular contract, and negates any effort by Rutledge either to undo the terms of the plea agreement by pointing to an alleged promise, made before the agreement was signed, to reward him for his cooperation, or to use that promise as the basis for an agreement that his related criminal

> conduct would not be used to increase his sentence. So even if the
> confession was extracted by a promise, that promise merged into
> the plea agreement; and the government did not violate the plea
> agreement.

*Id.* (citing *Hartman v. Blankenship*, 825 F.2d 26, 29 (4th Cir. 1987); *see also United States v. Wolf*, 44 Fed. Appx. 16, 20 (7th Cir. 2002) (citing identical plea agreement language to reject existence of implicit promise to withhold relevant conduct from probation office). Even assuming a different an agreement once existed, the plea agreement – which Tyra acknowledged he fully understood and signed (Dkt. 35-2, 6/24/04 Hr'g Tr. at 7-8) – changed the terms of that earlier agreement.

Further, during a colloquy required by Fed. R. Crim. P. 11 that took place before Tyra entered his guilty plea, Tyra denied under oath and in open court that any promises other than the plea agreement had been made. (*Id.*) Tyra also indicated that he understood that, if there were any other promises, we were not bound by them. *Id.* Again, these admissions create a strong presumption that Tyra's purported earlier proffer letter assurances were no longer on the table at the time he entered his guilty plea. "[T]he representations of the defendant [at a plea hearing]… constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citations omitted); *see also United States v. Peterson,* 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."); *U.S. v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999) (holding that defendant's Rule 11 statements were binding); *U.S. v. Key*, 806 F.2d 133, 137 (7th Cir. 1986) (did not hold that answers during Rule 11 colloquy are

necessarily binding, but still affirmed District Court's denial of § 2255 based on contradiction with Rule 11 questioning and in light of record suggesting defendant voluntarily entered plea agreement). Tyra' sworn statements contradict his current claim that the AUSA promised during the January interview to withhold self-incriminating evidence from the sentencing court. He offers no explanation for why he now contradicts his signed and sworn declarations that no promises other than the plea agreement existed.

Tyra also could not have reasonably believed the alleged earlier offer was still effective. The interpretation of plea agreements are governed by the parties' reasonable expectations. *See U.S. v. Schilling*, 142 F.3d 388, 396-97 (7th Cir. 1998). Even if Tyra believed the January 2004 promise were still in effect before February 2005 – and he swore under oath in June 2004 that he did not believe any agreement other than his plea agreement was operative at that time – Tyra could not have reasonably expected that the promise was still in effect after the government terminated his February 2005 interview. (*See* Exhibit E3) The record demonstrates that Tyra was not prejudiced by counsel's failure at Tyra's May 2005 sentencing hearing to object to the introduction of his admitted criminal background: no immunity agreement existed covering his February 7, 2005 admissions and Tyra could not reasonably believe one did.[7]

Alternatively, even if Tyra's proffer letter promise was still in effect after Tyra admitted his criminal history in February 2005, the government did not violate Sentencing Guidelines § 1B1.8(a) at the sentencing hearing; therefore, Tyra was not prejudiced by his counsel's acts or omissions. Section 1B1.8(a) provides that

---

[7] For the same reasons, Tyra's claim that counsel prejudiced his appeal by failing to raise the history issue also fails. Tyra cannot show that he would have had his sentence vacated or remanded had counsel raised this argument. *Mannino*, 212 F.3d at 842-43.

10

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

However, section (a) is limited by section (b), which provides:

> the provisions of subsection (a) shall not be applied to restrict the use of information … in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1 (Substantial Assistance to Authorities).

U.S.S.G. § 1B1.8(b)(5). The Commentary to the Guidelines further notes:

> This provision does not authorize the government to withhold information from the court but provides that self-incriminating information obtained under a cooperation agreement is not to be used to determine the defendant's guideline range. . . . Although the guideline itself affects only the determination of the guideline range, the policy of the Commission, as a corollary, is that *information prohibited from being used to determine the applicable guideline range shall not be used to depart upward*. In contrast, subsection (b)(5) provides that consideration of such information is appropriate in determining whether, and to what extent, a downward departure is warranted pursuant to a government motion under § 5K1.1 (Substantial Assistance to Authorities); e.g., *a court may refuse to depart downward on the basis of such information*.

U.S.S.G. § 1B1.8, comment, n. 1. While the Commentary follows § 1B1.8(b)(5) in focusing on government-initiated § 5K1.1 motions rather than U.S.S.G. § 2D1.1(b)(7) motions, the considerations are similar. The provision prohibits use of the self-incriminating information for the purposes of determining guideline ranges, not for purposes of considering downward departures.

The government did not include Tyra's history in its sentencing recommendation, and we

11

did not take his history into account when ruling on the applicable guideline range. (*See* Plea Agreement at 5) The plea agreement makes no mention of Tyra's criminal history beyond the crimes charged in this case.

Even if the government did improperly use Tyra's criminal history during sentencing, we still could have taken that information into account. 18 U.S.C. § 3661, states:

> No limitations shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

In *United States v. Threw*, 861 F.2d 1046, 1048 (7th Cir. 1988), the Seventh Circuit recognized that the government had breached a proffer letter when it included criminal history information in the defendant's pre-sentencing report. However, the *Threw* court explained, even though the government breached its agreement with the defendant, "the sentencing court committed no error in considering that information for purposes of imposing Threw's sentence. In fact, not to have considered the information would have constituted a violation of the court's statutory duty [under 18 U.S.C. § 3661]." *Id.* at 1051.

Because Tyra's history did not ultimately affect our ruling regarding his guideline range, and it was not error to consider it for purposes of the downward departure, Tyra was not prejudiced by his counsel's decision not to object when the government referenced that history at sentencing.

## III. CONCLUSION

For the reasons set forth above, we deny petitioner Lemuel Tyra's Motion to Vacate, Set Aside, or Correct Sentence.

It is so ordered.

_____

Marvin E. Aspen

United States District Judge

Date: July 9, 2007